MEMORANDUM OF DECISION RE CONSENSUAL TERMINATION
On December 19, 2002, the respondent mother Denise D. (Denise) and the respondent father John M. (John) appeared before this court for trial, pursuant to a petition for the termination of their parental rights (TPR) as to their sons Robert M. (Robert) and McKinley M. (McKinley), both born on 11/93. Both respondents were represented by competent counsel.
Prior to the commencement of evidence, the State, by its Assistant Attorney General (AAG), withdrew the TPR petition as to John. The AAG cited the opinion of the boys' therapist as the reason for withdrawing the petition. Then Denise, through counsel, filed a written consent to the TPR. The court conducted a thorough canvass of Denise, and subsequently accepted the consent. The State then orally amended the petition to allege the sole ground of consent as to Denise.
The State then called Department of Children and Families (DCF) Social Worker Robert McConnell as a witness. He testified that the boys were in a foster home and were doing well and had bonded with their foster family. McConnell also indicated that they were doing better in school. He testified that the DCF permanency plan called for long term foster care.
McConnell also testified that John had recently completed two parenting classes and bonded to the boys. He reported that Janice Phillips, the boys' therapist, felt that, because of the bond, it was not in their best interests to terminate John's parental rights.[2]
The court has reviewed the TPR petition, the TPR social study and the CT Page 116-u other exhibits. This court has jurisdiction over the pending case. Notice of this proceeding has been provided in accordance with the applicable provisions of the Practice Book. No action is pending in any other court affecting custody of McKinley and Robert.
The court has utilized the applicable legal standards[3] in considering this evidence and the testimony of the witness.[4] For the reasons stated below, the court finds that the TPR issues have been proven against Denise by clear and convincing evidence. The court finds in favor of the petitioner State of Connecticut and DCF.
 HISTORY
In 5/01, a neglect petition was filed and an Order of Temporary Custody (OTC) was obtained by DCF in Superior Court, Juvenile Matters on behalf of the above named children. The petition alleged the following:
 Denise and the children have a history with DCF dating back to 11/93 when they tested positive for cocaine at the children's birth. Denise has a history of chronic substance abuse and is not engaged in outpatient substance abuse treatment.
 John has admitted to inappropriate physical discipline and allowed his mentally retarded adult daughter to physically abuse McKinley and Robert in his home. Both children state that they are afraid of their adult half sister as a result of this physical abuse.
 John has failed to attend parenting classes, family therapy, or to cooperate with the parent aide. He has failed to insure that McKinley attends counseling at Child Guidance Clinic for treatment of Attention Deficit Hyperactivity Disorder.
In 5/01, the court (D.J.) accepted John's nolo plea, adjudged McKinley and Robert neglected and committed them to DCF. On the same day, Denise was defaulted. The commitment was extended on 5/02.
In June 2002, DCF filed a TPR petition against Denise and John, alleging abandonment, failure to rehabilitate and no ongoing relationship as to Denise, and failure to rehabilitate as to John. In 7/02 John appeared, entered denials and retained counsel shortly thereafter. Denise was defaulted (M.J.), but apparently filed an application for counsel later that day.
In 10/02, this court granted a motion to amend the names of the children. This court also denied a motion by Denise to reopen the CT Page 116-v default.
 ADJUDICATION
This court finds that the State has sustained its burden on the issue of consent against Denise by clear and convincing evidence.[5] The respondent mother submitted her consent to the TPR in open court, and was thoroughly canvassed prior to the court accepting each consent.
Consent is obviously a ground for a TPR. See CGS Sec. 17a-112 (a) et al.
CGS Sec. 17a-112 (k) exempts a consensual termination from the necessity of the seven written findings. However, even with a consent, the court must conduct a hearing to determine by clear and convincing evidence that termination is in the best interests of the children.
 DISPOSITION
The TPR social history indicates that Denise was born in 11/60 in Tennessee, the youngest of six children. Her family moved to Connecticut when she was six years old. She described her early years as "good" but at age 15 she was raped by a 29-year-old friend of her brother.
Denise reports that she graduated from high school in Connecticut in 1979. She was employed by the Timex Corporation for about five years at various locations. Denise has six children. Melvin G. is the father of Osha and Melvin who reside with their maternal grandmother. Denise does not know the paternity of her ten-year-old son, Joseph. Denise also has no idea of the paternity of her eight-year-old daughter, Nicole. Joseph and Nicole are in the area.
Denise started using cocaine at age 22 and crack cocaine at age 25. Denise has also engaged in prostitution over the years to support her drug addiction. Denise has been treated for her substance abuse at Berkshire Woods, Crossroads, and UCONN Dual Diagnosis Program.
According to the Connecticut State Police Bureau of Identification, Denise is a convicted felon and has been convicted of the following crimes: Breach of Peace, Prostitution, Possession of Narcotics, Drug Possession, Larceny in the First Degree, Larceny in the Second Degree, Larceny in the Sixth Degree, and Failure to Appear. She reported to DCF that she has never been married or served in the military.
Denise has a history of depression and has been treated at Hospital CT Page 116-w Adult Partial Hospitalization Program in the past. She has periodically experienced suicidal ideation since age 15, and also has a history of self-mutilation by cutting herself with a razor to relieve anger.
The TPR social study indicates that Denise has not addressed her abuse of substances and, has not maintained or demonstrated a consistent period of sobriety. She has not addressed her mental health issues. She has failed to secure appropriate, safe housing and has not been able to support herself financially. She has an extensive criminal history and is a convicted felon.
Denise has not inquired as to the well being of McKinley and Robert since their recommitment. She has not sent any cards, letters, or gifts for McKinley and Robert since their recommitment. She has never provided a home for her children since their birth. She has not provided McKinley and Robert with any social or religious guidance.
Denise has not attended any visits held by DCF, or any Administrative Case Reviews held by DCF. She has missed several court dates at Superior Court-Juvenile Matters
Denise currently resides with her stepfather. She has not initiated any contact with McKinley and Robert, nor has she made any effort to provide for these children. She has not attended any visitation since the children have been re-committed. She is offered weekly visitation and has never been present for these visits. She has never sent any letters, cards or gifts for Robert and McKinley and has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of her children.
Denise has never been present for any Administrative Case Reviews held by the Department of Children and Families. She has not shown for many court hearings, and she was not present in court for the children's most recent commitment in 5/01. She has an extensive substance abuse history and has not demonstrated a consistent period of sobriety. She does not address her mental health issues. She has an extensive criminal past that includes prostitution, larceny, and possession of narcotics.
Denise has been offered visitation with her children, McKinley and Robert, on a weekly basis. She receives all notices regarding her children's case and does not attend any case-related activities or court dates.
In reference to rehabilitation, there were no court-ordered specific steps for Denise or John during their most recent court involvement in CT Page 116-x May 2001. However, there were court ordered specific steps for mother and father in: 3/94, 5/96, and 3/98. In 3/94, 9/95, 3/97, 9/98, 3/99, and 5/01 the children, Robert and McKinley, were adjudicated neglected in this court.
Denise has failed to keep all appointments set by or with DCF. Denise missed all Administrative Case Reviews. She has failed to secure and maintain adequate housing and income. Denise has a history of unstable housing and unemployment. She has never offered a plan for the care of the children. She was incarcerated in 1997 for eight months for prostitution and drug charges, and again from 7/99 to 7/99 for prostitution.
For twelve months, despite the services offered, Denise has failed to demonstrate that within a reasonable time, considering the children's age and needs, she could assume a responsible position in the children's lives.
Denise has not made any attempts to call DCF regarding the well-being of her children. McKinley and Robert are nine years old and have spent six years in foster care in one foster home.
McKinley and Robert have not seen Denise since placement into DCF care in 5/01. The children do not ask for or talk about their mother. The children have no present/positive memories of mother. To allow further time for the establishment of a parent/child relationship would be detrimental to the best interests of the children.
John agreed to the commitment of the children to DCF care in 5/01. He has refused services that he has been referred to by DCF. He has only attended one Administrative Case Review, in 6/01. John has never offered a plan of care for the children.
For twelve months, despite the services offered, John has failed to demonstrate that within a reasonable time, considering the children's age and needs, he could assume a responsible position in the children's lives.
The TPR social study indicates that McKinley was a likable and caring 8 year-old boy who was outgoing and friendly. He was in good health and was up to date medically in his immunizations and well child-care visits. He was very active and enjoys sports and recreational activities. He enjoyed playing basketball, video games, and was interested in gymnastics. McKinley received special education services in his school and was in a self-contained classroom. At the time the social study was written, he CT Page 116-y was doing well academically, receiving A's and B's in his subjects. McKinley would be moving to the third grade in the next school year and would remain in a self-contained classroom for one more year. McKinley will continue to require a structured environment at home to reinforce his conduct in the classroom. His educational plan has him moving into a mainstream classroom in the fourth grade. McKinley was doing well, but can be oppositional at times. McKinley has been diagnosed with Attention Deficit Disorder and Oppositional Defiant Disorder and can be aggressive and is in need of direction and a structured environment. McKinley was currently on medication to manage his A.D.D. and O.D.D., which must be taken on a daily basis.
While McKinley was reunified with his father, John, in 1998, he failed to bring McKinley to the Child Guidance Clinic for counseling related to his diagnosis of A.D.D. and O.D.D. McKinley was also retained in kindergarten while in the care of John. John offered no structure in his home and was unable to control McKinley's behavior, which led to his relinquishing the guardianship and care of McKinley to the Department of Children and Families.
McKinley has adjusted well in his foster home and wishes to reside with his foster parents and refers to them as "mommy" and daddy." McKinley has resided with them since his birth until he was placed back with their father in August 1998. McKinley was placed back in the home of Wendy and Benny M. in May of 2001 after John voluntarily placed them into the care of the Department of Children and Families. McKinley is very bonded with his brother and his foster family and has benefitted from the structure and direction that he has received. McKinley is a very outspoken child who has told his foster parents that he wishes to remain in their care.
The TPR social study indicates that Robert is a likable and caring 8 year-old boy who was outgoing and caring. He was healthy and up to date medically. He was very active in sports and enjoyed basketball and video games. At the time the social study was written, he was doing very well academically. Robert has received A's, B `s, and C's in the marking period that the study was written and would be entering the second grade this year. He was in a mainstream classroom and received special education services. Robert also received counseling from a school social worker for one half hour per week. Robert has expressed to his school social worker that he wishes to reside with his current foster parents.
While in the care of John, Robert was retained in kindergarten and in the first grade. John offered no structure in his home, was not able to control Robert's behavior and relinquished care of Robert to the Department of Children and Families. Robert wrote a letter to the N.O.W. CT Page 116-z Connecticut Parenting Coalition to nominate his foster father as Parent of the Year, which the foster father subsequently won this year. Robert is very bonded with his brother and his foster family and has benefitted from the structure and direction that his foster parents have provided for him. Robert has been diagnosed with Attention Deficit Disorder and is in constant need of direction and a structured environment. Robert is not taking any medication at this time.
McKinley and Robert are nine years old and have spent six years in foster care in one foster home. They were placed at birth into their current foster home and remained there until the age of four. McKinley and Robert returned to their current foster placement at the age of seven as their father voluntarily relinquished custody of his children to the Department of Children and Families.
McKinley and Robert require stability and permanency. They are not able to receive this from Denise. Due to their young ages, they are extremely dependent upon a responsible, nurturing caregiver. Denise has not displayed these characteristics. Given the children's age and the respondent mother's abject inability to care for the children due to her substance abuse problems and mental health issues, it would be unfair to subject these children to further uncertainty about their futures as it relates to their mother. It is unlikely that Denise would ever adequately resolve her issues and be able to provide care for the children, or ever be a responsible part of their lives.
Based upon the evidence produced at the hearing, it is clear that the termination of Denise's parental rights is in McKinley's and Robert's best interests.[6] The court finds that the State has proved this by clear and convincing evidence.[7]
Therefore, the court finds that, based upon the credible evidence and testimony presented, it would be in the best interest of McKinley and Robert to terminate Denise's parental rights at this time. This finding is made after considering their sense of time, their need for a secure and permanent environment, the relationship that they have with their foster parents and the totality of circumstances.
It is accordingly ORDERED that the parental rights of Denise D. are hereby terminated as to her children McKinley M. and Robert M. A permanency plan shall be submitted in accordance with the law.
 JUDGMENT MAY ENTER ACCORDINGLY.
Taylor, J. CT Page 116-aa